IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF MISSISSIPPI

WESTERN DIVISION

MARIA WILSON                                          PLAINTIFF


VS.                            CIVIL No. 5:22-cv-62-DCB-LGI


KEMPER CORPORATE SERVICES, INC.,

UNION NATIONAL FIRE INSURANCE COMPANY,

ROBIN WILSON, ANGELA WASHINGTON,

JOHN DOE ENTITIES 1-5 AND JOHN DOES PERSONS 1-5.   DEFENDANTS


ORDER

THIS MATTER is before the Court on Kemper Corporate

Services, Inc. ("Kemper"), Union National Fire Insurance

Company ("UNFIC"), and Angela Washington's ("Washington")

Motion to Compel Arbitration [ECF No. 3][1], Defendant Robin

Wilson's Motion to Set Aside Entry of Default [ECF No. 7],

and Maria Wilson's ("Plaintiff") Motion to Remand [ECF No.

16]. The Court having examined the Motions, the parties'

submissions, the record, the applicable legal authority, and

being fully informed in the premises, finds as follows:


I.   Procedural & Factual Background

---

[1]Collectively referred to as "Defendants."

This matter stems from a dispute regarding an insurance claim filed by Plaintiff. On August 27, 2018, UNFIC issued Plaintiff an insurance policy covering personal property located at 2170A Tillman Chapel Road, Pattison, Mississippi 39144. [ECF No. 1-1] at 5.

Although Plaintiff can sign her name, she is unable to read or write. [ECF No. 14-4] at 2. Accordingly, Defendant Wilson filled out the insurance application for Plaintiff, who then signed the agreement. Id.

Sometime after signing the application, Plaintiff received the UNFIC insurance policy. Id. That policy contained an arbitration agreement, which covers any matter arising out of or related to the policy, the claimant's relationship with UNFIC, its agent, or affiliate company. [ECF No. 4] at 1. Plaintiff began paying the premiums on this policy. [ECF No. 14-1] at 4.

On April 1, 2019, a fire destroyed that residence and Plaintiff's personal property therein. [ECF No. 1-1] at 5-6. Plaintiff filed an insurance claim with UNFIC on April 17, 2019. Id. at 6. Following an investigation, UNFIC uncovered that Plaintiff did not live at the insured address, as

required for coverage by the insurance agreement.[2] [ECF No. 1] at 1-2; [ECF No. 1-5] at 8. Therefore, UNFIC denied Plaintiff's claim. [ECF No. 1] at 2.

On April 4, 2022, Plaintiff filed suit in the Circuit Court of Claiborne County, Mississippi, claiming damages on claims of breach of contract, tortious breach of contract, breach of good faith and fair dealing, negligence of Defendant Wilson, negligence of Defendant Washington, negligence and gross negligence of UNFIC and Kemper, fraud, and bad faith. [ECF No. 1-1].

Plaintiff served Defendant Wilson with process on June 14, 2022. [ECF No. 8] at 2. An answer was due on July 14, 2022. Id. Plaintiff then served Kemper and UNFIC on June 24, 2022, and Washington on July 1, 2022. [ECF No. 16] at 1.

On July 18, 2022, more than 30 days after service on Defendant Wilson, Plaintiff filed for an Entry of Default, which was entered the next day for failure to answer. [ECF No. 11] at 1. On that same day, Plaintiff filed a Motion for Default Judgment against Defendant Wilson. Id.

---

[2] When Plaintiff sought the policy, she represented that she was only temporarily residing away from the Subject Property and planned to move there the next month. [ECF No. 1-2] at 2. Plaintiff later represented that she was living at the Subject Property, though Defendant Wilson later found out (following the fire that led to the insurance claim) that Plaintiff never lived on the Subject Property. Id.

On July 25, 2022, Defendant UNFIC filed a notice of removal to this Court [ECF No. 1], followed by a Motion to Compel Arbitration on July 27 [ECF No. 3]. On August 1, 2022, Defendant Wilson filed an answer [ECF No. 5] and on August 5 filed a Motion to Set Aside Entry of Default [ECF No. 7]. On August 24, 2022, Plaintiff filed a Motion to Remand. [ECF No. 16].

Plaintiff is a citizen of Mississippi, as are Defendants Wilson and Washington. [ECF No. 1-1] at 2-3. Kemper is a citizen of Illinois and UNFIC is a citizen of Louisiana. Id. Defendant Wilson was the insurance agent who handled Plaintiff's insurance policy application; Washington was Wilson's supervisor but had no contact with the Plaintiff. [ECF No. 1] at 6. Defendant Wilson denies that she ever represented to Plaintiff that her personal property would be covered by the policy even if she did not live at the address covered by the policy. [ECF No. 1-2] at 3.

II.  Defendants' Motion to Compel Arbitration

Defendants, in this Motion to Compel Arbitration, request:

> (1) an Order pursuant to 9 U.S.C. § 4 compelling arbitration of Plaintiff's claims against the Defendants;

(2) an Order pursuant to 9 U.S.C. § 3 and other law enjoining Plaintiff from proceeding with or attempting to judicially prosecute any claims against Defendants until this Court has ruled upon the enforceability of the arbitration provisions at issue and an arbitration has been conducted, concluded, and finally confirmed in accordance with the terms of the applicable arbitration provisions; staying this case as to Defendants pending arbitration with the decision of the arbitrator to be entered as the judgment of the Court;

(3) an expedited ruling on this matter pursuant to 9 U.S.C. § 4;

(4) an Order staying discovery as to all parties until such time as the Court rules on Defendants' Motion to Compel Arbitration and to Stay Proceedings Pending Arbitration; and

(5) such further, different, or additional relief as may be appropriate under the premises.

[ECF No. 3] at 2-3.

Magistrate Judge Isaac entered an Order Staying Discovery in this case on August 10, 2022, in accordance with Rule 16(b)(3)(B) of the Local Uniform Civil Rules for the Northern and Southern Districts of Mississippi, which requires staying proceedings when a party has filed a motion to compel arbitration. [ECF No. 10]. That request is now moot.

a. Legal Standard

When adjudicating a motion to compel arbitration, courts first must determine whether the parties agreed to arbitrate

the dispute in question. Fleetwood Enters., Inc. v. Gaskamp,
280 F.3d 1069, 1073 (5th Cir.2002).

In order to make this determination, courts must decide:
"(1) whether there is a valid agreement to arbitrate between
the parties; and (2) whether the dispute in question falls
within the scope of that arbitration agreement." Personal
Sec. & Safety Sys., Inc. v. Motorola, Inc., 297 F.3d 388, 392
(5th Cir.2002) (citing OPE Int'l LP v. Chet Morrison
Contractors, Inc., 258 F.3d 443, 445 (5th Cir.2001)
(citations and internal quotation marks omitted)).

If a court decides that the parties have agreed to
arbitrate the dispute in question, it then must determine
"whether legal constraints external to the parties' agreement
foreclosed the arbitration of those claims." Webb, 89 F.3d at
258. Furthermore, arbitration "should not be denied unless it
can be said with positive assurance that [the] arbitration
clause is not susceptible of any interpretation which would
cover the dispute at issue." Municipal Energy Agency of Miss.
V. Big Rivers Elec. Corp., 804 F.2d 338, 342 (5th Cir. 1986).

  b. Analysis

This Court will first address the validity of the
agreement before considering whether Plaintiff's claims fall
within the scope of that agreement.

6

i.   Validity of the Arbitration Agreement

The Arbitration Agreement attached to Plaintiff's insurance policy provided in relevant part that:

> This Arbitration Agreement and waiver of right to trial by Jury ("Arbitration Agreement") requires that any dispute involving this policy between the company, and the insured, owner, beneficiary, or any other party who has an interest as a claimant ("claimant"), must be resolved through binding arbitration.

[ECF No. 3-1] at 15.

Plaintiff argues that the Arbitration Agreement is invalid, alleging that she never signed it, there was no meeting of the minds, and that the Agreement is procedurally and substantively unconscionable. [ECF No. 14] at 2.

The Court will first discuss Plaintiff's signature argument. Id.

Plaintiff argues that the policy that she agreed to was merely what was listed on her signed application for insurance, not on the later-delivered insurance policy that included the Arbitration Agreement. [ECF No. 15] at 2; [ECF No. 3-1].

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which

he has not agreed so to submit." Hill v. G E Power Systems, Inc., 282 F.3d 343, 347 (5th Cir. 2002).

Still, such an application is merely an offer to contract. Mutual Omaha Insurance Company v. Driskell, 293 So.3d 261, 263 (Miss. 2020); Provident Life & Accident Inc. Co. v. Goel, 274 F.3d 984, 992 (5th Cir. 2001). Even though an insurance application states different terms from the ultimate policy, making payments on the insurance premium confirms acceptance of those final terms. Driskell, 293 So.3d at 264.

Because Plaintiff paid the premiums on the insurance policy that contained the Arbitration Agreement, the lack of a signature on that term is immaterial, as it was accepted by performance. [ECF No. 14-1] at 4.

The Court will now discuss Plaintiff's argument that there existed no meeting of the minds. [ECF No. 14] at 2.

Plaintiff argues that the Arbitration Agreement is invalid for lack of a meeting of the minds, because it was not included in the initial application that she signed and that it was only later delivered to her, which she alleges obviates consent to the policy. [ECF No. 15] at 4. Plaintiff's contention hinges on the argument that, because she cannot read or write, Defendant Wilson's failure to read

the entire policy to her or disclose that the application was not the final policy precluded a meeting of the minds.

Contracts require a meeting of the minds to be valid. Am. Heritage Life Ins. Co. v. Lang, 321 F.3d 533, 538 (5th Cir. 2003). Nevertheless, that requirement can be met and a party can be contractually bound by signing the agreement, even if that party, literate or not, does not read the agreement. Id. (quoting Samson Plastic Conduit & Pipe Corp. v. Battenfeld Extrusionstechnik GMBH, 718 F.Supp. 886, 890 (M.D.Ala.1989); St. Petersburg Bank & Trust Co. v. Boutin, 445 F.2d 1028, 1032 (5th Cir.1971)). As has been discussed, performance can take the place of a signature in contract formation. Driskell, 293 So.3d at 264.

Additionally, Defendant Wilson had no duty to read or explain the terms of the contract to Plaintiff. There exists no duty to disclose the terms of an insurance policy absent a special, fiduciary relationship. Smith v. Union Nat'l. Life Ins. Co., 286 F.Supp.2d 782, 787 (S.D. Miss. 2003). Mississippi law imposes no fiduciary duties from an insurance agent to an insured. Walden v. Am. Gen. Life, 244 F. Supp. 2d 689, 696-97 (S.D. Miss. 2003); Hicks v. N. Am. Co. for Life & Health Ins., 47 So.3d 181, 191 (Miss. Ct. App. 2010).

Similarly, in <u>Hicks</u>, the Mississippi Court of Appeals held that representations regarding an insurance policy by an insurance agent that induced the purchase of such a policy did not by itself create a fiduciary relationship. <u>Hicks</u>, 47 So.3d at 191.

Even Plaintiff's illiteracy did not impose such a duty on Defendant Wilson, though it did obligate Plaintiff to find someone to read the contract for her and her failure to do so imputed knowledge of the contents of the contract. <u>Smith</u>, 286 F.Supp.2d at 788. ("A person who cannot read 'has a duty to find someone to read the contract to him.'" (quoting <u>Howard v. CitiFinancial, Inc.</u>, 195 F.Supp.2d 811, 822 (S.D. Miss. 2002)).

Therefore, Mississippi law imposed no affirmative duty on Defendant Wilson to fully explain the terms of the insurance policy to Plaintiff and her representations regarding the policy did not by itself create such a duty to fully explain those terms. <u>Barhonovich v. Am. Nat. Ins. Co.</u>, 947 F.2d 775, 778 (5th Cir. 1991). (When an insurance policy states its terms on its face, it is unreasonable for the insured to rely on representations counter to the policy).

Furthermore, Plaintiff's mistaken belief that the application was the final policy is likewise unpersuasive. As

in Driskell, Plaintiff paid the insurance premiums in accordance with the final terms of the insurance policy, which was an act of acceptance that clearly evidenced a meeting of the minds as to those final terms, even though they were not included in the application. Driskell, 293 So.3d at 264.

The Court will now address Plaintiff's third argument: that the Arbitration Agreement is procedurally and substantively unconscionable. [ECF No. 14] at 2.

Unconscionability is "an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party." MS Credit Ctr., Inc. v. Horton, 926 So. 2d 167, 177 (Miss. 2006). Unconscionability can be procedural or substantive. Covenant Health & Rehab. of Picayune, LP v. Est. of Moulds ex rel. Braddock, 14 So.3d 695, 699 (Miss. 2009).

Procedural unconscionability can be shown by "(1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms." Caplin Enterprises, Inc. v. Arrington, 145 So.3d 608, 614 (Miss. 2014)

Plaintiff cannot demonstrate a lack of knowledge because of her failure to read or understand the policy that contained the Arbitration Agreement. Horton, 926 So. at 177. Likewise, lack of explanation of the insurance policy also does not amount to a lack of knowledge. Id. at 177-78. As discussed supra, transmitting the final insurance policy sometime following the signing of an application for such is not problematic. Driskell, 293 So.3d at 264.

"A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." Entergy Mississippi, Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (quoting Bank of Indiana, Nat. Ass'n v. Holyfield, 476 F.Supp. 104, 110 (S.D. Miss. 1979)).

No evidence suggests that the Plaintiff requested removal of the Arbitration Agreement or negotiation of any such term within the insurance policy, which precludes a finding that this agreement lacked voluntariness. Horton, 926 So. at 178.

Plaintiff further contends that the complex, legalistic language of the Arbitration Agreement and the imbalance of bargaining power between the two parties demonstrates procedural unconscionability. However, Mississippi courts have "refused to employ a rule which required the parties to every contract to be of exactly equal sophistication." Horton, 926 So. at 179. Again, there is no evidence that suggests any attempt to negotiate these terms.

As to the allegedly complex, legalistic language of the Arbitration Agreement, this Court finds that the language quite clearly requires that disputes regarding this insurance policy "must be resolved through binding arbitration." [ECF No. 3-1] at 15. Clear language that is not difficult or misleading will not give rise to unconscionability. Horton, 926 So. at 178.

"Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive." Arrington, 145 So.3d at 614 (quoting E. Ford, Inc. v. Taylor, 826 So.2d 709, 714 (Miss. 2002)).

Plaintiff argues that the Arbitration Agreement is substantively unconscionable via allegations that (1) the Policy was a contract of adhesion, (2) there is a disparity between the knowledge and experience of the contracting

13

parties as it pertains to insurance contracts; and (3) that it deprives the Plaintiff of a judicial remedy. [ECF No. 15] at 10-12.

As discussed supra, this Arbitration Agreement was neither a contract of adhesion nor is it unconscionable for any disparity between the parties. These arguments remain unpersuasive.

Plaintiff's final argument that the Arbitration Agreement deprives her of a judicial remedy lacks merit. Courts "respect the right of the individual…to agree in advance of a dispute to arbitration." IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 104 (Miss. 1998). Such an agreement is substantively conscionable if it "merely submits the question of liability to a forum other than the courts." Horton, 926 So. at 179. Such is the case in the instant agreement. [ECF No. 14-3] at 14-15.

Having analyzed all the arguments regarding validity, this Court finds that there is a valid agreement to arbitrate between these parties. Motorola, Inc., 297 F.3d at 392.

ii.  Dispute is in Scope of Arbitration Agreement

The Arbitration Agreement enumerates twelve categories of disputes that fall within the scope of the Arbitration

Agreement, among them (1) whether a policy dispute must be arbitrated under this Arbitration Agreement; (2) the payment or denial of claims; (3) assignment of policy of benefits; conversion of premiums or policy values; (4) agent conduct in connection with the sale, taking of the application, or servicing of the policy; (5) any claim alleging fraud, deceit, suppression, misrepresentation or omission of any material fact in the sale of the policy. [ECF No. 14-3] at 14.

Plaintiff's claims fit squarely into these enumerated categories. [ECF No. 1-1].

The Agreement also includes a catchall provision regarding scope that covers "any other matter arising out of or relating in any way to this policy or the claimant's relationship with the company, its agents, servants, employees, officers, directors or affiliate companies." Id.

This Court has previously compelled arbitration on the basis of similar catchall provisions that mechanically place the dispute in the scope of the language. Regions Bank v. Britt, 2009 WL 3766490, at *3 (S.D. Miss. Nov. 10, 2009).

Having analyzed all the arguments regarding the scope of the agreement, this Court finds that the dispute in question

falls within the scope of the arbitration agreement.
Motorola, Inc., 297 F.3d at 392.

iii. External Legal Constraints

Having found that the parties have agreed to arbitrate
the dispute in question, we must now determine "whether legal
constraints external to the parties' agreement foreclosed the
arbitration of those claims." Webb, 89 F.3d at 258. Neither
party avers any issue not previously disposed of that would
preclude this Court from compelling arbitration.

Furthermore, arbitration "should not be denied unless it
can be said with positive assurance that [the] arbitration
clause is not susceptible of any interpretation which would
cover the dispute at issue." Big Rivers Elec. Corp., 804 F.2d
at 342. The Arbitration Agreement is susceptible to no other
interpretations in this case other than compelling these
claims to binding arbitration. [ECF No. 14-3] at 14-15.

III. Defendant Wilson's Motion to Set Aside Entry of
     Default

Defendant Wilson, in her Motion to Set Aside Entry of
Default, requests the Court set aside the Claiborne County
Circuit Court clerk's entry of default against her. [ECF No.
7].

a. Standard

A court may set aside an entry of default upon a showing of good cause. Lacy v. Sitel Corp, 227 F.3d 290, 291-92 (5th Cir. 2000). Three factors determine good cause in this context: "(1) whether the default was willful, (2) whether setting it aside would prejudice the adversary, and (3) whether a meritorious defense is presented." Jenkens Gilchrist v. Groia & Co., 542 F.3d 114, 119 (5th Cir. 2008). Courts may consider other factors, including, whether "the defendant acted expeditiously to correct the default." See Matter of Dierschke, 975 F.2d 181 (5th Cir. 1992).

b. Analysis

Defendant Wilson argues that her default was not willful, that setting it aside will cause no prejudice to the Plaintiff, and that she has meritorious defenses to Plaintiff's claims. [ECF No. 7] at 1-2.

Again, the clerk entered default on Defendant Wilson on Plaintiff's motion after Defendant Wilson failed to answer within the 30-day time frame. [ECF No. 11] at 1.

However, default judgments "should not be granted on the claim, without more, than the defendant failed to meet a procedural time requirement." Lacy, 227 F. 3d at 292. In

17

fact, default judgments should be "resorted to by courts only in extreme situations." Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n, 874 F. 2d 274, 276 (5th Cir. 1989).

This Court will apply the good cause standard in determining whether to set aside the entry of default, as iterated supra in Lacy and Jenkens. Any doubt shall "be resolved in favor of a judicial decision on the merits of a case," because "a technical error or a slight mistake by [the party's] attorney should not deprive [the party] of an opportunity to present the true merits of [its] claims." Blois v. Friday, 612 F. 2d 938, 940 (5th Cir. 1980).

i.   Willfulness

Defendant Wilson alleges that her failure to answer the complaint within the 30-day timeframe was caused by attorney oversight, a clerical error caused by multiple defendants being served on different dates, and a miscommunication regarding responsibility for filing an answer. [ECF No. 8] at 4; [ECF No. 18] at 2.

Defendant Wilson was served weeks apart from her employer and supervisor. [ECF No. 16] at 1. Additionally, the fact that her counsel of record is the same as her supervisor and employer's counsel further supports Defendant's theory that default was not willful. Absent a record that indicates

willfulness, a mistake regarding the course of litigation that causes a failure to respond is not willful. <u>Lacy</u>, 227 F.3d at 292-93. Nothing in this record indicates that Defendant Wilson intended to frustrate the course of litigation.

Additionally, Defendant Wilson did file an answer on August 1, 2022, 7 days after removal. [ECF No. 5]. F.R.C.P. 81(c)(2)(C) permits defendants who failed to answer prior to removal to do so within 7 days following removal. Such an answer can be effective, even if the defendant missed "the state-court deadline to answer." <u>See</u> Rule 81. Applicability of the Rules in General; Removed Actions, 2 Federal Rules of Civil Procedure, Rules and Commentary Rule 81. The fact that the defendant was in default does not preclude removal, though does require a set aside for an answer to be effective. <u>Id.</u>; <u>Knezevich v. Carter</u>, 805 Fed. Appx. 717, 723 (11th Cir. 2020).

Filing such an answer within 7 days of removal in accordance with F.R.C.P. 81(c)(2) demonstrates a lack of willfulness to default during the state proceedings; filing such an answer following a state court entry of default and a removal of the case to federal court has been cause to set aside the entry of default. <u>Placeres v. Costco Wholesale</u>

Corporation, 541 F. Supp. 3d 217, 222 (D.P.R. 2021). Filing such an answer further demonstrates that Defendant Wilson "acted expeditiously to correct the default." Dierschke, 975 F.2d at 184.

Plaintiff mistakenly relies on L.A. Pub. Ins. Adjusters, Inc. v. Nelson to argue that Rule 81(c)(2) only grants time to answer in removed cases prior to default. 17 F.4th 521 (5th Cir. 2021). That case regarded a litigant's failure to observe Rule 81(c)(2)'s requirement to answer following removal, not any pre-removal entry of default. Id. at 522-23. Furthermore, Plaintiff concedes that Nelson was decided upon Rule 6(b), regarding a motion for extension of time, a completely different matter altogether. Id. at 524.

In sum, this record evidences no willfulness in the default analysis and a clear willingness to abide by Rule 81(c)(2)'s requirement to answer following removal.

ii.   Prejudice

To demonstrate prejudice sufficient to find that good cause does not exist, "the plaintiff must show that the delay will result in the loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion." Lacy, 227 F.3d at 293. Setting aside an entry of

default, which would require that Plaintiff prove her case, is not sufficient prejudice. Id.

In this case, any delay caused by Defendant Wilson's initial failure to answer is de minimis and has not resulted in loss of evidence, difficulties in discovery, or greater opportunities for fraud or collusion. At worst, that failure caused some confusion regarding Defendant Wilson's participation in this case, which she clarified in her answer and this instant motion. [ECF No. 5]; [ECF No. 8].

Plaintiff argues that a set aside will cause her prejudice, as she alleges such a set aside would violate the Rooker-Feldman doctrine, which generally precludes federal district court review of state court final judgments. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 280-81 (2005).

Rooker-Feldman is inapplicable, because Defendant Wilson is not seeking appellate review of a final judgment, but a mere set aside of an entry of default. Id.; [ECF No. 7]. No such final judgment was granted during the state court proceedings, even though Plaintiff did ultimately move for such a final default judgment. [ECF No. 11] at 1. At removal, the state court clerk had merely granted an entry of default. Id.

Even so, the Fifth Circuit has permitted removals following entry of state court default judgments. FDIC v. Yancey Camp. Dev., 889 F.2d 647, 648 (5th Cir.1989) (citing cases); Murray v. Ford Motor Co., 770 F.2d 461, 463 (5th Cir.1985). Rooker-Feldman does not preclude setting aside an entry of default or a default judgment, as this review "implicates this Court's original jurisdiction rather than the 'appellate review' prohibited by the Rooker-Feldman doctrine." Bernadas v. Am. Empire Surplus Lines Ins. Co., No. CIV.A. 07-2966, 2007 WL 4180541, at *1 (E.D. La. Nov. 21, 2007)(citing In re Meyerland Co., 960 F.2d 512, 516 n. 6 (5th Cir.1992)).

Federal statutory law confirms a district court judge's authority to set aside such a preliminary entry: "All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C.A. § 1450 (West)(emphasis added).

Plaintiff will suffer no prejudice from this Court setting aside the state court entry of default.

iii. Meritorious Defenses

Plaintiff alleges that Defendant Wilson is liable for negligence and fraud. [ECF No. 1-1] at 10-11, 14-16.

Defendant Wilson has meritorious defenses against both
claims.

Regarding the negligence claim, insurance agents are not
liable for ordinary negligence in performing their duties on
behalf of insurers. Jenkins v. Farmington Cas. Co., 979 F.
Supp. 454, 457 (S.D. Miss. 1997) (quoting Bass v. California
Life Ins. Co., 581 So.2d 1087, 1090 (Miss. 1991)).

Defendant Wilson simply served as an insurance agent who
performed her employment duties on behalf of the insurer in
assisting Plaintiff procure an insurance policy. [ECF No. 14-
4] at 2. This claim fails as a matter of law, providing
Defendant Wilson with a meritorious defense.

As discussed supra, Plaintiff's breach of her own duty
to read her insurance policy further unravels any claim of
negligence against Defendant Wilson. Driskell, 293 So.3d at
264. "[I]nsureds who possess a policy that contradicts an
agent's representations cannot rely on the agent's
representations to create coverage when none exists." Id.

Regarding the fraud claim, nine elements must be shown
to prove a prima facie case of fraud.

> The elements of fraud include: (1) a
> representation; (2) its falsity; (3) its
> materiality; (4) the speaker's knowledge of
> its falsity or ignorance of its truth; (5) his

intent that it should be acted on by the hearer
and in the manner reasonably contemplated; (6)
the hearer's ignorance of its falsity; (7) his
reliance on its truth; (8) his right to rely
thereon, and (9) his consequent and proximate
injury.

Hutton v. American General Life & Acc. Ins. Co.,
909 So. 2d 87 (Miss. Ct. App. 2005).

Defendant Wilson argues that this claim too fails
as a matter of law on at least the eighth element:
Plaintiff's right to rely on a representation.

There can be no right to rely on a representation
that may be counter to the terms of a contract, such
as an insurance policy, where the insured has a duty
to read the contract and where knowledge of the
contractual terms will be imputed to the party even if
she does not read it, as is the case here. Smith, 286
F.Supp.2d at 788; Am. Gen. Financial Servs., Inc. v.
Griffin, 327 F. Supp.2d 678, 684 (N.D. Miss. 2004).

Additionally, when an insurance policy states its
terms on its face, it is unreasonable for the insured
to rely on representations counter to the policy.
Barhonovich v. Am. Nat. Ins. Co., 947 F.2d 775, 778
(5th Cir. 1991).

The policy very plainly stated that its coverage
only extended to the dwelling "where [Plaintiff]
live[d]." [ECF No. 1-5] at 8. It was unreasonable for
Plaintiff to rely on any representation of otherwise,
thereby precluding any claim for fraud against
Defendant Wilson. Therefore, Defendant Wilson has a
meritorious defense against this claim.

Defendant Wilson has shown good cause that her
default was not willful, she possesses a meritorious
defense, and setting it aside would not prejudice the
Plaintiff. Setting aside the state court's entry of
default is appropriate.

IV.  Plaintiff's Motion to Remand

Plaintiff, in her Motion to Remand, requests the Court
remand this action to the Claiborne County Circuit Court and
award attorney's fees, costs, and expenses from removal. [ECF
No. 16]; [ECF No. 17] at 12-13.

a. Legal Standard

Federal courts are courts of limited jurisdiction, whose
jurisdiction is conferred by the Constitution or Congress.
Energy Mgmt. Servs., LLC v. City of Alexandria, 739 F.3d 255,
257 (5th Cir. 2014); "The removing party bears the burden of

showing that federal jurisdiction exists and that removal was proper." Manguno v. Prudential Prop. & Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002); Nowlin v. United States, 81 F. Supp. 3d 514, 524 (N.D. Miss. 2015). "Because removal raises significant federalism concerns, the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." Gutierrez v. Flores, 543 F.3d 248, 251 (5th Cir. 2008).

"Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." Lincoln Property Co. v. Roche, 546 U.S. 81, 84, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005).

In this case, Plaintiff and Defendants Wilson and Washington are all citizens of the State of Mississippi. [ECF No. 16] at 3. Thus, facially, complete diversity does not exist. However, if a defendant is not properly joined, then removal would again be proper. Smallwood v. Central Ill. Railroad Co., 385 F.3d 568, 573 (5th Cir. 2004). "The party seeking removal bears a heavy burden of proving that the joinder of the in-state party was improper." Id. at 574.

b. Analysis

Plaintiff argues that Defendants' joinder is proper because (1) the entry of default against Defendant Wilson is deemed an admission of liability, (2) Plaintiff's negligence claims against Defendants Wilson and Washington are valid, and (3) Plaintiff's fraud claim against Defendant Wilson is valid. [ECF No. 17] at 4-12. Defendants argue that Plaintiff fraudulently joined them to this action, thus permitting removal and precluding remand. [ECF No. 21] at 2-3.

i.   Entry of Default

This Court, having already reached the conclusion that setting aside the entry of default against Defendant Wilson is appropriate, need not address Plaintiff's argument that such entry served as an admission of liability. This argument is now moot.

ii.   Fraudulent Joinder

Improper joinder can be established by demonstrating either "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Smallwood v. Illinois Cent. R.R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc).

As the inquiry in the instant case focuses solely on the second prong, "the threshold question for [the Court] is whether 'there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.'" Gasch v. Hartford Acc. & Indem. Co., 491 F.3d 278, 281 (5th Cir.2007) (quoting Smallwood, 385 F.3d at 573).

The burden of proof is on the removing party to establish improper joinder. Jabour v. Life Ins. Co. of North America, 362 F.Supp.2d 736, 740 (S.D.Miss.2005). Under this standard, the plaintiff "may not rest upon the mere allegations or denials of [his] pleadings." Id. (quoting Beck v. Texas State Bd. of Dental Examiners, 204 F.3d 629, 633 (5th Cir.2000)).

"Thus, the district court may 'pierce the pleadings' and consider 'summary judgment-type evidence' (e.g., affidavit and deposition testimony) when inquiring whether a resident defendant has been fraudulently joined." Id. (citing Ross v. Citifinancial, Inc., 344 F.3d 458, 461 (5th Cir. 2003)).

As discussed in the proceeding analysis, the Court holds that Defendants Wilson and Washington were improperly joined to this action, because no cause of action can be established

against either party as a matter of law. Therefore, diversity jurisdiction is proper.

A. Fraud Claim

To establish a fraudulent misrepresentation, the elements of fraud must be proven by clear and convincing evidence. Levens v. Campbell, 733 So.2d 753, 761 (Miss.1999). These elements include: 1) a representation; 2) its falsity; 3) its materiality; 4) the speaker's knowledge of its falsity or ignorance of its truth; 5) his intent that it should be acted upon by the person and in the manner reasonably contemplated; 6) the hearer's ignorance of its falsity; 7) his reliance on its truth; 8) his right to rely thereon; and 9) his consequent and proximate injury. Id.

Plaintiff claims that Defendant Wilson made fraudulent statements regarding the intended insurance coverage. [ECF No. 1-1] at 14-16. "As the Fifth Circuit Court of Appeals has determined, any claimed reliance by a policyholder upon assertions that all damage caused by a hurricane, including flooding, is covered by a homeowner's policy that excludes flood damage, as in this case, is unreasonable as a matter of law where there is policy language clearly excluding flood damage." Rhodes v. State Farm Fire & Cas. Co., No. CIV.108CV674-HSO-RHW, 2009 WL 563876, at *6 (S.D. Miss. Mar.

4, 2009) (citing <u>Leonard v. Nationwide Mutual Ins. Co.</u>, 499
F.3d 419, 439-40 (5th Cir. 2007)).

"Plaintiff cannot base a fraud claim upon alleged
misrepresentations that contradict the plain language of the
insurance policy." <u>Id.</u> According to the Fifth Circuit, a
policyholder, such as Plaintiff here, has an affirmative duty
to read the policy in question. <u>See id.</u> (citing <u>Smith v.
Union Nat'l Life Ins. Co.</u>, 286 F.Supp.2d 782, 788
(S.D.Miss.2003); <u>Gulf Guar. Life Ins. Co. v. Kelley</u>, 389
So.2d 920, 922 (Miss.1980)). "Whether the policy was read or
not, however, constructive knowledge of its contents is
imputed to the policyholder." <u>Id.</u> (citing <u>Ross v.
Citifinancial, Inc.</u>, 344 F.3d 458, 464 (5th Cir.2003)
(internal citation omitted)).

Any claimed reliance by Plaintiff upon an alleged
representation that her coverage extended beyond the terms of
the insurance contract was unreasonable as a matter of law.
<u>Leonard</u>, 499 F.3d at 439-40; Therefore, Plaintiff cannot
maintain a claim for fraud against Defendant Wilson. <u>See,
e.g., Rhodes</u>, 2009 WL 563876, at *8.

B. Negligence Claims

Under Mississippi law, insurance agents and adjusters,
while not liable for ordinary negligence in performing their

duties on behalf of the insurers, can "incur independent
liability when [their] conduct constitutes gross negligence,
malice, or reckless disregard for the rights of the insured."
Bass v. California Life Ins. Co., 581 So.2d 1087, 1090 (Miss.
1991) (quoting Dunn v. State Farm Fire & Casualty Co., 711
F.Supp. 1359 (N.D. Miss. 1987)). In other words, agents for
insurance companies can be held liable for conduct that
constitutes an independent tort, but not ordinary negligence.
Gallagher Bassett Services, Inc. v. Jeffcoat, 887 S.2d 777,
785 (Miss. 2004).

    Plaintiff claims that Defendants Wilson and Washington,
as employees of Kemper and UNFIC, had a duty to truthfully
explain the terms of the insurance policy to Plaintiff and
that their alleged failure to do so constituted negligence.
[ECF NO. 1-1] at 10-13. However, "a person is under an
obligation to read a contract before signing it, and will not
as a general rule be heard to complain of an oral
misrepresentation the error of which would have been
disclosed by reading the contract." Godfrey, Bassett &
Kuykendall Architects, Ltd. v. Huntington Lumber & Supply
Co., 584 So.2d 1254, 1257 (Miss.1991).

    In this case, Plaintiff had a duty to read her insurance
policy. Id. Additionally, Defendants Wilson's and

Washington's status as agents for Defendants UNFIC and Kemper further insulate them against claims for negligence. Jeffcoat, 887 S.2d at 785. See, e.g., Bass, 581 So. 2d at 1090. (Such agents are "not liable for simple negligence in adjusting a claim.") Because a reading of the policy would have prevented any misapprehensions stemming from any potentially negligent misrepresentations or failures to explain the policy, these claims against Defendants Wilson and Washington fail as a matter of law. Jabour v. Life Ins. Co. of N. Am., 362 F. Supp. 2d 736, 744 (S.D. Miss. 2005).

iii. Attorney Fees, Costs, and Expenses

Courts have the discretion to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). In general, "courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005).

Having found that removal was proper, the Court shall not award attorney's fees, costs, or expenses.

V.  Conclusion

Accordingly, Defendants' Motion to Compel Arbitration [ECF No. 3] is GRANTED IN PART and DENIED IN PART AS MOOT; Defendant Wilson's Motion to Set Aside Entry of Default [ECF No. 7] is GRANTED; and Plaintiff's Motion to Remand [ECF No. 16] is DENIED.

THIS COURT therefore compels these parties to arbitrate these claims in accordance with the Arbitration Agreement and further enjoins and stays judicial prosecution of such claims until an arbitration has been conducted, concluded, and finally confirmed in accordance with the terms of the Arbitration Agreement.

SO ORDERED this 13th day of October, 2022.

/s/ David Bramlette
DAVID C. BRAMLETTE III
UNITED STATES DISTRICT JUDGE